in the United States and his Honorable Court. Good morning. Our case, our first case for today is 2023-20337, Abraham Watkins, Nichols, Augusto, Aziz, and Stodner v. Edward Festeryga. We will first hear from Mr. Weinberg, and we appreciate the accommodation of counsel and given the turn of weather events, which is more or less than historic in New Orleans this week. So, Mr. Weinberg. Thank you, Chief Judge Elrod, and may it please the Court. This case belongs in federal court, and this Court has the power to say so. For nearly 50 years, the Supreme Court has held that remand orders are appealable so long as they are not based on a lack of jurisdiction or a statutory defect in removal. The parties agree that the waiver-based remand order here was not based on a lack of subject matter jurisdiction. So the only question for this Court is whether waiver by participation in state court proceedings creates a statutory defect with removal. The answer is no. Nothing in Title 28, Chapter 89 of the U.S. Code turns on waiver, and that means this Court can hear this appeal. My friend offers two responses. First, he says that this Court's decision in Weaver, quote, effectuates Section 1447D's bar on appeals of remand orders. But Weaver was decided shortly after ThermTron and its reasoning reflects that fact. The Weaver Court thought ThermTron would be a one-off decision that should be, quote, strictly limited to, quote, an extreme situation. And on that basis, Weaver held that a waiver-based remand order cannot be appealed. But time has shown that Weaver, not ThermTron, is the outlier. The Supreme Court has affirmed ThermTron at least six times since 1976. The Court has expanded its holding into new contexts. And the Court has accorded ThermTron the strongest form of statutory stare decisis protection. Under ThermTron and its progeny, non-jurisdictional, non-statutory remands like the one here are appealable. The Court should overrule Weaver, which incorrectly held otherwise. Second, my friend suggests that Weaver creates a defect with removal. But in every circuit, the test for whether a removal is defective turns on whether the defendant complied with the statutory requirements for removal. My friend cites that test in the red brief at page 32, but then never applies it. Everyone agrees that Mr. Festeriga ticked all the right procedural boxes when removing this case. The removal was timely, all defendants agreed to it, and so on. That means the removal was not defective, and this Court has appellate jurisdiction. I'd also like to address Weaver. Congress gave Mr. Festeriga 30 days to remove this case to federal court. He took just 17 of those days, and then he properly removed. Those two facts should all but establish that he did not waive his removal rights. A finding of Weaver should be exceptionally rare. That's because Congress has specified when and how defendants can remove. Indeed, Congress has expanded the time for defendants to remove from 20 days to 30, and it did so based on a finding that 20 days were too few. The Court's waiver precedents reflect that reality. Since the Bailey decision in 1989, this Court has held that a waiver of the right of removal must be clear and unequivocal. So a defendant generally cannot waive his right to remove through state court conduct, quote, short of proceeding to an adjudication on the merits. In the 17 days that Mr. Festeriga spent in state court, he did not proceed to an adjudication on the merits. Over Thanksgiving, he hired counsel, fended off invasive discovery demands, filed a motion to limit his participation in state court litigation, researched removal, concluded he could remove, and then removed to federal court. That conduct does not show clear and unequivocal intent to forego federal litigation. The district court erred when it ruled otherwise. It thought that this Court's decision in Johnson meant that the mere filing of a motion to dismiss waived the right to remove. But Johnson involved years of litigation in which the state court resolved multiple dispositive motions against the defendant. The Court thought the claim there was no waiver there was, quote, lacking in seriousness. This case is in a different universe. Mr. Festeriga did not wait years to remove. He took only 17 days, about half the time Congress gave him. And the state court did not decide, indeed it could not decide, Mr. Festeriga's TCPA motion. Under Bailey and Tedford and under persuasive authority from the 9th and 11th Circuits, Mr. Festeriga's conduct was not waivered. I welcome the Court's questions. I'm happy to begin on the appellate jurisdiction question. Under precedent from the Supreme Court, remands are appealable as long as they're not based on a defect in removal or lack of subject matter jurisdiction that flows from ThermTron, which I said in my opening has been reaffirmed many times. I recognize that ThermTron is a difficult case to square with the plain text of Section 1447D, but all the background principles that would support its application here I think are present. Congress has generally expanded appellate jurisdiction over remand orders instead of contracting it. And so, you know, the temptation, I think, to treat ThermTron like Bivens, which I think my friend has suggested, would not apply. The question for this test is whether waiver is jurisdictional or statutory, and the answer is no. That test flows, again, from principles of vertical stare decisis from ThermTron and cases like it. The panel examined at length why waiver is not a jurisdictional consideration. That's at pages 8 to 9 of the panel opinion. My friend agrees at page 31 of the red brief. And no statutory provision covers waiver. My friend suggests that waiver may be a defect in removal. But the leading case on this point is Snapper. Judge Higgins, did I see you have a question? Yeah, one's a little bit esoteric, and the other is more sort of basic. The esoteric one is if you were to prevail, so we reverse, and then the district court resolves your client's statement to the PTO to bar his assertion of diversity, so the district court then remands again, that remand would not be reviewable, correct? That's correct. That flows straightforwardly from 1447C. A remand based on a lack of subject matter jurisdiction would not be appealable. So that issue is either going to stay lurking in the case, or it's one we should decide first, the diversity jurisdiction dilemma in this case. I think the en banc court just needs to resolve waiver. Of course, there's no mandatory sequencing of jurisdictional issues. That's from Supreme Court decisions like Rurgas and the tester standing case from last term. So I think the en banc court can just resolve that waiver, too, and leave it to the panel to decide subject matter jurisdiction. Of course, the panel could do a limited abatement of the appeal and remand for the district court to decide subject matter jurisdiction. But let me just address the trademark point head on. We have in the record the full corrected trademark application at pages 366 to 370 of the record. On page 369 of the record, the corrected application correctly identifies Mike Fine as a citizen of Canada. I think any suggestion to the contrary, there's ample evidence that has been unrebutted that he is a citizen of Canada, and that creates alienage jurisdiction for the district court. Thank you. If you don't mind, just a more basic question then. If you were to prevail again, and therefore we're assessing the district court's determination of waiver by participation, what's our standard of review? And if you have a case, that would be great. And then I'm still a little confused when I look across the circuits. They do seem to decide substantiality differently in terms of how substantial does the state court litigation. I understand your point, 17 days is pretty small, half of 30. But I'm wondering about a standard review, and am I correct that other circuits assess substantiality as abandoning the federal forum differently? So two points on that. The standard, we say, is de novo because the district court made a pure legal error when it considered that this court's decision in Johnson meant that the filing of a motion to dismiss constitutes waiver. I don't have a case right offhand, but that's in our blue brief. My friend at the panel stage oral argument argued that the standard should be abuse of discretion, but he conceded there that a district court abuses its discretion by getting the law wrong. And so I don't think there's really a dispute over the standard of review. Of course, if the court made a legal error in assessing the waiver question, that would be grounds for reversal. And then in terms of the standard for waiver, our test is that you need to find clear and unequivocal evidence of the intent to forego the right to litigate in federal court. And we think that is the substantial majority test among the circuits. The 9th and 11th circuits have both cited the Bailey decision from this court, which reflected that principle. And they hold that filing a motion to dismiss another sort of initial wrangling in the state court is insufficient to create a waiver of the right to removal. And I think that, you know, that that harkens all the way back to the Supreme Court's decision in the Rosenthal case in 1893, where the court made clear that the purpose of waiver is to prevent a defendant from experimenting on his case in state court. And then we're moving after getting a bad result. And we have that in the blue brief and page 28. And so we think that that is a high standard and it's one that's not met here. Well, could you be thought of as having experimented in state court by bringing a claim that was not by bringing your T.C.P.A. motion, which is not cognizable in federal court and which gives you attorneys fees, even if the other side non suits and in which you also said in your T.C.P.A. motion, 17 page motion, that you were seeking to eliminate all but one claim, your right to bonus payments, that it appears in the motion itself that you might have been seeking to plow through in state court. In addition to agreeing to other orders and agreeing to be bound by them in state court when you were there. Can you address the merits of all of those things? So it seems to be more than a Johnson issue on the facts here, especially the given that T.C.P.A. is such a such a both offensive and defenses as judges Pemberton and fields have both recognized. I'd like to address that question in a few parts. And thank you, Your Honor. The T.C.P.A. motion, as you recognize, is a procedural vehicle available only in Texas state court. And so when we remove the case, we gave up our right to seek attorneys fees and other redress under the T.C.P.A. motion. I think that's clear evidence that we did not intend to stay in state court. And I'd also note that the T.C.P.A. motion had not been and could not have been set for a hearing. That's a factor that both the 9th and 11th circuits have found persuasive against a finding of waiver. Your honor also noted some other orders in the state court. For instance, the fact that we agreed to a protective order that my friend put forward. I think agreeing to a protective order under this court's decision, for instance, and strong is not the type of action in state court that would lead to a finding of waiver. And again, I want to root us in the purposes of the waiver doctrine, which is that we want to prevent a defendant from getting a benefit on the merits of the case or seeing how the district court in the state court is going to resolve the merits of the case and then remove the case. That's the sort of unfairness that the waiver doctrine is aimed at. And I think that's not a consideration that's present in this case. Judge Ramirez, I see you have a question. What about the fact that your client entered into a proposed agreed order for temporary injunction? Doesn't that go beyond discovery? No, your honor. And in fact, the temporary injunction order is a request that my friend had made. And we had entered into that agreement as sort of an accommodation to them. If you read the temporary injunction, it's at page 157 of the record. What it requires us to do is not spoliate evidence, not steal from clients, things of that nature. And again, we agreed in federal court to be bound by similar protections for my friend. And so, again, I think that is not the type of merits-based benefit that we would have gotten in state court that would lead to a concern about unfairness that would lead to an application of the waiver doctrine. What about the agreement in the agreed protective order that the state court would retain jurisdiction to enforce the protective order? That kind of boilerplate language is present, I think, in almost any protective order that I'm familiar with. What it says is after this case is over, the state court is going to have the ability to continue to enforce the confidentiality protections present in the protective order. But again, I think that's sort of far afield from the purpose of the waiver doctrine, which is to show some benefit on the merits. We did not get a benefit on the merits by agreeing to a protective order that the other side put forward. And I think some of these questions are getting at, you know, why didn't we just remove immediately instead of doing any of this wrangling in state court? And I have a few responses to that. One, I think it was an exercise of professional diligence. You know, the basis for federal court jurisdiction, we think, is clear on the facts here, but it's not exactly a 1L civil procedure issue, right? You don't confront alienage jurisdiction sort of in the mind run of cases. And so we took time to research and confirm that the case was removable. And I think that was good conduct that this court shouldn't announce a rule that would discourage, because then you're going to encourage sort of frivolous removals. I think that's a problem with my friend's rule. He says any seeking of affirmative relief, undefined term, could be grounds for finding waiver. And what I think that's going to do is encourage defendants to immediately waive without conducting the due diligence necessary to confirm that there is federal court jurisdiction. I see you have a further question. I do, and it's on the alienage jurisdiction issue. At the time he filed this lawsuit, was your client a citizen of a foreign state who was lawfully admitted for permanent residence in the United States and was domiciled in the same state? No, Your Honor. He was a citizen of Canada who was not admitted for lawful permanent residence in the United States. On page 10 of the blue brief, we have the relevant statutory provision that because he was here under a TN visa, it does not permit him lawful permanent residence status. We have multiple affidavits in the record, pages 6, page 11 in the record. He affirms that he is a Canadian citizen, not a lawful permanent resident. The factual basis of that affidavit has not been rebutted. My friend has pointed only to a trademark application in which my client has explained at page 350 of the record, paragraphs 2 and 3, and we have this in the blue brief at pages 53 to 54, that the attestation there that he was a United States citizen was in error, and he promptly corrected that error once he had found it out. My friend has absolutely no response, has never had a response to that point. And I will represent to the court that when he corrected the trademark application and correctly identified himself as a citizen of Canada, that trademark application was granted. We had that in a request for judicial notice in the docket here at page, sorry, docket number 62. The request for judicial notice was denied at docket 86. But the point still stands that my client is a Canadian citizen, not a lawful permanent resident. And so the basis for ailing his jurisdiction here are, we think, quite clear from the record. Just to follow up on my friend's test about affirmative relief. Again, I've emphasized that I think that that test has serious downsides and will encourage frivolous removal claims. And I think, you know, the test should be oriented towards encouraging actions like the ones that we took, which was we were facing a full court press. We availed ourselves of the procedural mechanisms available in state court to slow that down, took the time to research removal and then removed. I think there's a serious problem if you remove without confirming that the case is removable, you risk sanctions. Judge Higginson, I see you have a question. Do you have any opinion as to the circuits that perceived the 30-day statutory limitation to have fully swallowed any notion of common law waiver by participation? Your Honor, I appreciate that question. I think we clearly win under that test. And so I don't want to fight it too hard. I do think that there is a situation where we would recognize waiver that those courts, I'm not totally sure, would, for instance, in the Rottner decision. I think if you have a situation where a district court issues a tentative ruling on a motion to dismiss, saying I'm going to deny your motion to dismiss, and then you remove five minutes later, that's the sort of fairness based scenario where I would think the waiver doctrine should have some teeth. But again, I don't want to fight that rule too hard. I do think if this court is searching for a bright line rule, that would be the one to apply. Because as you know, Congress did give defendants 30 days to remove. And as we noted in our brief federal rule of civil procedure, 81C does seem to contemplate quite a bit of state court back and forth. That would then get transported with the case. And we think there would be really relatively little reason for that rule if any activity in state court is going to constitute waiver. Any thoughts on whether or not the waiver analysis in the remand to state court should be symmetrical or parallel with the waiver analysis in the motion to compel arbitration context? Where we do have cases where filing motions to dismiss on affirmative defenses obviated the ability to get to go to arbitration. Should those doctrines be parallel or should there be a reason for a distinction between those two analyses? I think one reason for a distinction and for applying a stricter waiver standard in this context would be Congress's decision to expand the time to file a removal motion from 20 days to 30. Congress did so based on finding that 20 days would be quote, too short to permit the removal of many actions as to which valid grounds of removal exist. We cite that in the blue brief on page 47. And so I think in the context of arbitration, that might be more akin to a situation where we would also find waiver here, which is where you would have a contractual clause agreeing to submit the case to state court for adjudication. We would find waiver in that instance, but I think the general, the congressional backdrop and sort of the common law backdrop that is animated the waiver doctrine here, which, as we cite in the blue brief in 28, is really rooted in notions of fairness. I think that that does mean that waiver should be a little harder to find in this context. Judge Duncan, do you have a question? Yes, thank you, Mr. Reichbold. I'm following up on Judge Higginson's question about the circuits that say the 30-day period swallows up the common law waiver rule. If this, let's just say hypothetically, some judges on this court wanted to follow that rule, is it only the en banc court that could do that, given our rule of orderliness, or could a panel do that? I do think a panel could do that. The cases that I've seen have only ever affirmed findings of no waiver, and so this court has not really taken, had the chance to elucidate what exactly constitutes waiver. In Bailey, of course, there was language to the effect that you would need to proceed to an adjudication on the merits. I think that can be squared with Rottner, the Seventh Circuit's decision there. I think that is perhaps a different way of saying what Rottner ultimately concluded, but I do think a panel would have the discretion to reach that conclusion. Of course, I do think if the court were going to find waiver in this situation, it would have to be the en banc court, because I think a finding of waiver would be inconsistent with Bailey and Tedford, and so I think there would at least have to be a limited abrogation of those decisions. You talked about the 30 days to file your motion, well, your removal, but you had 60 days to file your state court motion to dismiss, so why isn't proceeding with the state court motion with a procedure that's only available in state court, not indicative of an intent to litigate in state court? I think the more persuasive evidence of our intent is the fact that we gave up that procedure by removing, but again, I don't think our argument depends on timing. It depends on objective evidence of intent of the right to avail ourselves of the federal forum. We think if you're going to look at timing, you would also have to consider the fact that the state court could not decide our TCPA motion when we removed, and I think that would be a powerful reason to not find the 60 day time to bring the TCPA motion to be all that persuasive. I see my time's running low, and so I'd like to end where I began, which is by saying that this court has the power to hear this case and the power to say so, and so we would ask that you vacate the district court's judgment and remand for further proceedings in federal court. Thank you. Thank you, Judge Elrod. May it please the court. My name is Robert Owen. I'm here on behalf of the appellee, Abraham Watkins, and we appreciate the opportunity to address the en banc court today and to discuss the very interesting procedural issues that are raised by this case. At the outset, I think it's important to note, and I think the court's aware based on its questions, that there are three separate hurdles that Mr. Festeriga has to overcome to prevail in this appeal. If he can't overcome any separate hurdle, the district court's remand order should be sustained. First, Mr. Festeriga has to get over the threshold issue of subject matter jurisdiction. However, the record contains Mr. Festeriga's own conflicting sworn statements regarding his nationality, and the record also fails to conclusively establish that Mr. Festeriga is living temporarily in the United States. Mr. Festeriga did not obtain findings from the district court on any of these facts, and we believe that on its own is fatal to his appeal. Second, to assert appellate jurisdiction, the court obviously has to reverse its 1980 Weaver opinion. For reasons I'll explain momentarily, we don't believe that it should do so. And third, if the court were to find that it had subject matter jurisdiction and appellate jurisdiction, Mr. Festeriga would have to establish that the district court abused its discretion when it found that he expressed an intent to proceed in state court. We don't believe that that evidence exists in this record. So while any of these issues on its own would be fatal to Mr. Festeriga's appeal, I want to spend the remainder of my opening five minutes discussing Weaver. So whether Weaver was correct or not has to start with analysis of Congress's intent in Section 1447, in which it held that in order remanding a case – sorry, when Congress stated, in order remanding a case to a state court from which it was removed is not reviewable on appeal or otherwise, except that in order remanding a case to state court pursuant to Section 1442 or 1443 shall be reviewable by appeal or otherwise. This case obviously doesn't impact Section 1442, which deals with federal officers, or 1443, which deals with certain civil rights cases. Supreme Court has held that the purpose of Section 1447 is to avoid interruption of the litigation of the merits of a removed case, and we see that purpose clearly at play here, where this case has been stuck in the very initial stages for over two years. So while on its own, I think we would all agree that Section 1447 indicates that this is not – that there is no appellate jurisdiction here. The Supreme Court has also held that Section 1447D has to be read in pari materia with 1447C, and that it's limited to – that review of remand orders is limited to where they're based on one of two grounds, either the lack of subject matter jurisdiction or a defect in removal. So what Weaver held was that waiver is not subject to appellate review under 1447D, and we – and it's important to look at the precise language that the panel set forth in Weaver, and they said, in the present case, the district court concluded that removal, if it had been proper at all, was no longer available after petitioner sought disillusion of an injunction in state court. Such a ruling is not within the specific enumerated grounds of Section 1447C, and at the same time, it does not state a non-Section 1447C ground, as was the case in Thurmtron. In such a case, this court is precluded from reviewing the order of remand. The panel then explained its reasoning, and it said, it seems apparent that at the time of removal, Judge Enfield believed that the case was not removable, leading to a logical inference that he felt that jurisdiction was lacking. Such a holding is within the guidelines of 1447C. So the question becomes, what did the panel mean when it said jurisdiction was lacking? As we've said throughout this appeal, jurisdiction in that instance cannot mean subject matter jurisdiction. Subject matter jurisdiction cannot be created or lost due to waiver. So the court must have been referring to what at the time would have been an improvident removal and would now be a defective removal. I'm out of five minutes of my five-minute time, so I welcome any questions. Judge Duncan. Well, so thanks, Mr. Owen. So just following up on that, what I hear you saying is that when we read Weaver, we should not read it to say this was a jurisdictional problem. The waiver created a jurisdictional problem. We shouldn't read it that way. Is that what you're saying? Well, I'm saying that you should not read it to say that it creates a problem with subject matter jurisdiction.  I mean, because, I mean, as I recall, I was on the panel. The panel said, well, it's saying that it believed jurisdiction was lacking, so we have to take it at its word. We don't think that's right. At least the panel doesn't think that's right. But we have to take it at its word. You're saying that when the court says, leading to the logical inference that he felt jurisdiction was lacking in the second-to-last sentence of the opinion, it doesn't mean subject matter jurisdiction. That's precisely what I'm saying, Judge. Okay, great. So you're hinging your argument on the idea that this was instead a defect of removal. Correct, Your Honor. That is a jurisdictional defect, but not a defect of subject matter jurisdiction. Jurisdiction is a very broad term, and it really refers to just the court's power to render a judgment in a case. Here, where any right of removal has been waived, the federal court lacks jurisdiction to render a decision. Okay, so I guess my follow-up then is, what is your best case that a waiver-based finding by the district court is a defect of removal? Because my understanding is that the modern case law on defect of removal has to do with failure to abide by the statutory requirements, and not the kind of common law waiver we have here. Sure. That is the majority rule, and there are a few cases. What I would say is, waiver effectuates Congress's intent set forth in Section 1447, and the best cases would be the Ninth Circuit's case in Schmidt versus the Insurance Company of North America, or the district court case in Florida, which we cited in our red brief. The majority of cases say that waiver does not constitute a defect of procedure, but, of course, that doesn't give effect to the congressional intent. It fails to avoid interruption of the merits of litigation. And also, in my opinion, in Power Act, the Supreme Court stated that where there is a colorable ground that removal fell within Section 1447D, that that should be given effect. Judge Elrod, I believe you have a question. I do have a question, and it involves subject matter jurisdiction. Does the record reflect whether the law firm in any way sponsored Mr. Festeriga for his TN visa? Yes. The employment? Go ahead, Mr. Olin. Yes, it does. So, when Mr. Festeriga joined Abraham Watkins, the law firm wrote a letter sponsoring him based on statements that Mr. Festeriga had given to them. At the time, they obviously did not know that he—well, actually, at the time, he hadn't made his sworn statement to the USPTO regarding his nationality. So, yes, the law firm did sponsor Mr. Festeriga for a TN visa, but the record doesn't reflect that it was aware of all the facts at the time. Thank you. If we get to the third point, is it easy for you to give me the best case that you say stands for an abuse of discretion standard review? And any circuit, any circuit that sort of confirms standard review in this situation, plus what you would say is a coherent substantiality test to show abandonment of a federal forum. And so the best case on standard review and the substantiality test. And then, if you don't mind, third, discuss Tedford quickly. Okay, let me try to take those questions. So, as to the first question, standard of review, Judge Higginson, the Fifth Circuit in Adair v. Lease Partners, which is cited at page 38 of our red brief, states that the standard review in waiver cases is abuse of discretion. And that certainly makes sense because waiver is a mixed question of law and fact. It's a fact question about whether a party intended to invoke the jurisdiction of a state court. So the district court's findings on intent should be given discretion. Now, whether there is a legal issue, obviously judges have no discretion to get the law wrong. So, for the legal question, it is an abuse of discretion to get the law wrong. So, to answer the first question, abuse of discretion standard, Adair v. Lease Partners. The second question, I believe, was, what is the second question? Well, yeah, when I look at Wright and Miller and more federal practice, it's a sort of a messy spectrum. And I'm wondering what circuit you think best distills down what the substantiality test is so that you forfeited your right to the federal forum. Can you think of one that you think is the clearest and most articulate? Well, I think I would say go back to Judge Elrod's question and to my friend, Mr. Reinbold. This court has announced questions, has set forth questions. Sorry, I'm getting tongue tied. It has announced standards in the context of arbitration. I guess I'm just going to interrupt and say, you know, he didn't get a bad adverse decision and then trying to appeal in federal court. He didn't have a hearing on the merits. It was just 17 days. So do you have a circuit in mind that would say that equates to intent to abandon? No, I don't think there is a circuit that says that equates to intent to abandon. But it's really because these are very fact intensive questions. And also, I don't believe it's correct to say that he didn't receive a bad ruling from the judge. So when Mr. Festeriga filed his TCPA motion, there's ample evidence in the record that the purpose of that was primarily to avoid returning misappropriated documents. And so his counsel, after filing the TCPA motion, said, you know, there's an automatic stay now in place. You don't get any discovery. So let's move forward on figuring out what you need to respond to my TCPA motion and we'll handle it that way. There was a then a motion to compel discovery where the district court partially agreed and partially disagreed with Mr. Festeriga's statements about the automatic stay and ordered a limited discovery. Then there was a there was a agreed order on that on that ruling that was submitted. It's in the record, but was never signed. However, the day before the discovery was to come to under the agreed order, Mr. Festeriga removed. So he he filed his TCPA motion, sought relief from the court, made an argument under the TCPA, which was partially accepted and partially rejected. And then at that point, removed the case to federal court. So he did not have to comply with the state court's order. In our opinion, that's that's the epitome of a waiver. You test. He tested out the state court, cited he didn't like how it was ruling and then sought a different forum. That that is an intent that that supports a finding that he intended to that he. When he files the TCPA motion, seeks relief under the TCPA, gets a preliminary ruling that supports the district court's finding that he intended to adhere to that he intended to invoke the jurisdiction of the state court. Mr. He removes that he's already waived his right to remove at that point. Thank you. Mr. Owen, would the 10th Circuit's opinion and city of Albuquerque support that way of looking at it? Or the 8th Circuit's opinion in the windmill case? Would either of those support that approach or would those support a stricter, more Tedford like approach? Well, Your Honor, I think that all courts, all courts that look at this issue realize that this turns on a question of intent. And intent is somewhat nebulous and fact based. So the question becomes. Based on a party's actions in state court, what did it clearly intend to do? So I think I think I think the the test from the other circuits all would support exactly what I'm saying, that that we give the facts to the district court judge to make a decision on what was intended here. Judge Hanks finds that that Mr. Festeriga intended to proceed in state court. And there is a lot of evidence to support that. I realize that Mr. Festeriga removed after after testing out the preliminary basis of his TCPA motion. But by filing the TCPA motion, a automatic stay comes into place. He also seeks various affirmative relief under the TCPA. It's not the case that he gave that up because he is stated the purpose of filing the TCPA motion was to always preserve that right. And in fact, that those issues are still being litigated in state court. There's simply ample evidence that supports Judge Hanks decision that that Mr. Festeriga waived a right to remove Judge Duncan. Your friend on the other side, Mr. Reinbold told me that he thought our circuit law would permit a panel of our court to side with circuits who have said that Congress is putting a 30 day limit on removal really washes away the whole waiver idea. Do you agree with that? Would that be would that be something a panel could could could recognize and join those circuits or or can only the ombud court do that? No, I would agree with that. A panel of a panel could do that. Okay. No, no rule of orderliness problem. There's there's no rule of orderliness that I'm there. There's no case where I'm aware of that you would be reversing. So a panel could make that decision in the first instance. Thanks. Oh, the last thing I would say reflect what the status is of the documents at this time. I'm sorry, Judge. All right. You were cutting out a little bit for me. I'm sorry. Does the record reflect what the status is of the return of the alleged documents that belong allegedly belong to the law firm? What is the status of that? If there if the state court had ruled that they needed to be returned or preserved and then the district court, what's what's the state? Where are the documents now? So the record is the record reflect your honor. The record does does not reflect. Well, the record reflects that they haven't been returned. And that that is in reality where where we stand, because, like I said earlier, we are still stuck in the very initial phases of this of this lawsuit. Because what has happened was. Case was removed. Abraham Watkins filed a motion to remand. Judge Hanks then essentially state stayed the case moving forward while that that motion remand was considered. The case was eventually remanded. And at that point, the TCPA motion was then is was and is being litigated in state court. So the TCPA is automatic. Stay is in place in the parallel state court proceedings. There's currently an appeal of a denial of the TCPA order, and that's in the public record. So. So where we are is the documents have not been returned. There's been a partial production of documents that were taken, but they have not been returned. Opposing counsel filed an appeal of the denial of the TCPA order. Correct. And that's permitted under under the TCPA interlocutory appeal pursuant to chapter twenty seven. Right. Right. But would not be permitted in federal court. No, because there wouldn't be TCPA at all. Right. There is no. This court has explicitly as explicitly held that the TCPA does not apply in federal court whatsoever. The has the the TROs expired of its own power by this time? No. That's the. Or has it been extended or. So in my opinion, there is still a temporary restraining order in effect. There was a agreed injunction that was that was submitted to the state court. That's that is in the record. That was never signed by by the state court judge. But there is a temporary restraining order and agreed an agreed injunction in the record. So. Has your side sought to enforce that in state court? No, Your Honor, because of the TCPA stay. So we're currently involved in a parallel appeal regarding the TCPA motion and the district denial of that motion. And the automatic stay is in place until there's a resolution of that appeal. And that appeal is is actually currently abated pending resolution of this case. Does anything any order or any agreement by the parties prevent Mr. Festeriga from using these documents and soliciting these clients in the meantime? He is restrained from doing so by the temporary restraining order and the agreed injunction. And we have and we have no evidence that he is that he has violated those orders. Well, I think here, if there are no other questions, I would like to close by just saying we believe that that Weaver is properly decided that it gives effect to Congress's intent. It avoids the harm that we see in this case where cases penned in limbo and their initial stage in their initial stages for years. And. Weaver should not be should not be reversed. Thank you. We have your Mr. Owen, Mr. Run save time for rebuttal. You may proceed, sir. Thank you, Your Honor. I'd like to make a few points if I may on rebuttal. My friend addressed the defect question. What does a statutory defect term defect mean for that? You would look to our reply brief page 3 note 1, where we collect decisions from every regional circuit saying that the term defect means a statutory problem for removal. So, my friend is, I think, undersold it a bit when he calls it the majority rule. My friend sites, the 9th circuits decision in Schmidt. Schmidt followed Weaver and so Schmidt was wrongly decided as well. And, of course, the, the rule in the 9th circuit, as we cite in our reply brief. Is that statutory defects are the only ones that count as defects. My friend also cites the Paris decision. That was a middle district of Florida decision from 1977. It is no longer good law, even in the middle district of Florida, because in the 11th circuit waiver based remand orders are appealable. My friend made a number of factual claims that I'd like to address 1st. He said that the case has been delayed for 2 years. In fact, this case would have been over and litigated to a final judgment and it remained in federal court. The district courts docket control order is in the record as pages for 18 to 419. That order put the close of discovery on December 15th, 2023, and would have had a trial last summer. So, the claim that there is any delay, in fact, flows from the litigation over the remand. My friend made a claim that. Or at all a dismissal under the judgment and carries raised implications. I apologize that you were cutting out just there. Would you mind repeating yourself? It didn't matter at all that a dismissal under the T. C. P. A. is a judgment on the merits and carries raised you to caught implications. Under the best versus clear channel case out of the 14th court, which is that does it matter that it would be a merits based decision a dismissal under the does that implicate things? We don't dispute that a T. C. P. A. motion does involves merits based considerations under our test. The fact that we did not proceed to a full adjudication on the merits because there were the statutory bars based on the hearing timing and other factors means that we haven't satisfied the requirements for waiver or the way the waiver requirements aren't satisfied here. I'd also like to address my friends claims about the discovery in this case. Does it matter that T. C. P. A. is considered us for a request for affirmative relief? Not under our rule, your honor. Again, our rule shows turns on whether there has been some indication on the merits of the case. And so, for instance, if we had had our T. C. P. A. motion denied before removal, we would find waiver in that instance. But the fact that it was merely out there would not lead to waiver under our rule and under the rules from the 9th and 11th circuits. You also mentioned the Soto case, which my friend did not cite. We think that that the decision there, I think, is not really keyed on the right factors for waiver. Soto suggests that many motions to dismiss at least once based on the merits of the case would lead to waiver. I think that that is not really keyed to the purpose of the waiver doctrine, which focuses on whether there has been some benefit on the merits of the case that the defendant is trying to avoid. I think the mere filing of a motion to dismiss does not yield those benefits. You also mentioned the windmill case. The facts there, I believe, were that the case had been pending for 2 years before the defendant filed a motion for failure to dismiss based on failure to prosecute. So, it's not really a motion to dismiss on the merits there. My friend suggested that. Thank you very much. Why not set the TCPA motion for hearing? Is this a matter of trying to have your cake and eat it too? No, Your Honor. We could not under Texas rules of procedure. We set them in the blue brief. We could not have set it for a hearing at that stage. There needs to be a minimum of 21 days from filing of the TCPA motion to the hearing. I also want to address the concern that there might be some gamesmanship played there. The TCPA puts limits on how long you can wait before setting a hearing. The hearing has to occur generally within 60 days of the filing of a TCPA motion. So, it's not a situation where we could have just filed a motion and then waited as long as we would have liked. I see my time has expired, but if there are any further questions, I'd be happy to address them. Thank you. Thank you, Your Honor.